***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter of this action. All the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff-employee at all relevant times alleged herein.
3. Pursuant to the Form 22 submitted, plaintiff's average weekly wage was $328.16, which yields a compensation rate of $218.78 per week.
4. Defendant-employer was an approved self-insured with Kemper Risk Management Services acting as its administrator at all relevant times herein.
5. The issues to determined by the Commission are as follows:
 a) Whether plaintiff developed an occupational disease as a direct result of employment with defendant-employer; and
 b) If so, what, if any, workers' compensation benefits is plaintiff entitled to receive.
 ***********
The Pre-Trial Agreement along with its attachments and any stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff was a forty-seven year old woman at the time of the hearing before the Deputy Commissioner.
2. Plaintiff began working for defendant-employer on or about March 30, 1998 as a cake decorator. This position required plaintiff to decorate 10 or more cakes per day. In order to decorate a cake, plaintiff first selected the cake size and then iced the base of the cake. She then placed the frosting into a squeeze bag, placed the right tip on the end of the bag and then while constantly squeezing the bag, went around the bottom, the sides and across the top of the cake. Plaintiff had to maintain constant pressure on the bag because if she did not, the border would not be continuous. Plaintiff testified that it required at least 36 squeezes to place the decoration on a cake. It took 18 squeezes to do the sides and 18 to do the top of each cake.
3. The amount of pressure required to decorate the cakes varied depending on the size of the tip being used.
4. Plaintiff not only decorated cakes but she was also required to decorate other pastries, such as cupcakes.
5. Plaintiff's primary job with defendant was decorating cakes, and she spent most of her day doing this task. Some part of her day was spent cleaning up her work area and helping out in other parts of the store.
6. Approximately five weeks after plaintiff starting working for defendant, she began to experience pain in her right hand and wrist. The pain woke her at night and her hand went numb from time to time. Plaintiff's hand also hurt while she was decorating cakes at work for defendant-employer.
7. Plaintiff initially went to see her family doctor who diagnosed carpal tunnel syndrome in her right hand. Plaintiff's family doctor sent her to see Dr. William J. Busby.
8. Dr. Busby initially saw and treated plaintiff on or about June 30, 1998. After examining plaintiff, Dr. Busby concluded that she had carpal tunnel syndrome of the right hand and arm. Dr. Busby attempted to treat plaintiff's condition conservatively but plaintiff continued to have pain and other problems with her right hand. Therefore, Dr. Busby decided to operate on plaintiff's right hand to correct her carpal tunnel problem.
9. Dr. Busby performed surgery on plaintiff's right hand on July 13, 1998. Following plaintiff's surgery, her symptoms improved and plaintiff was released to return to work on August 10, 1998. When plaintiff returned to work, she was unable to perform the job of cake decorator because the squeezing caused her right hand and arm to hurt.
10. Dr. Busby was of the opinion and the Commission so finds that plaintiff's position with defendant-employer caused her to develop carpal tunnel syndrome in her right hand or in the alternative, her position significantly aggravated a possible pre-existing mild carpal tunnel condition. Dr. Busby went on to state that "plaintiff's job, which required repetitive squeezing of bags of cake frosting, would definitely predispose the patient [plaintiff] to carpal tunnel syndrome. This is the type of activity that frequently and characteristically would cause chronic irritation of the median nerve at the wrist." Plaintiff's position with defendant-employer placed her at an increased risk, as compared to the general public not so employed, of developing carpal tunnel syndrome.
11. Dr. Busby assigned plaintiff a 10% permanent partial disability rating to the right hand due to her carpal tunnel syndrome in her right hand, resulting from her employment with defendant-employer.
12. Defendant hired Al Gorrod, an ergonomic evaluation specialist, to evaluate plaintiff's job. Mr. Gorrod testified that he conducted a generic analysis of the job of cake decorator on April 28, 1999. Mr. Gorrod did not observe plaintiff performing the job of cake decorator. Based on his generic analysis, Mr. Gorrod stated that he did not think that plaintiff's job as a cake decorator with defendant-employer placed her at an increased risk of contracting carpal tunnel syndrome as compared to the general public. Mr. Gorrod further stated that he thought that each individual performs the job of cake decorator differently and that there is no specific threshold of force to determine if a person will or will not get some diagnostic problem. Additionally, Mr. Gorrod testified that it is possible that if plaintiff had symptoms of carpal tunnel syndrome, her job as a cake decorator could have aggravated her carpal tunnel syndrome.
13. The Commission gives greater weight to the opinions of Dr. Busby than to the opinions of Mr. Gorrod as to the cause of plaintiff's condition.
14. Plaintiff returned to work for another employer on August 18, 1998, earning greater wages than she was making at the time of the contraction of the occupational disease.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff developed the occupational disease of carpal tunnel syndrome to her right hand and arm as a direct result of her position with defendant-employer. Plaintiff's employment placed her at an increased risk of developing the occupational disease as compared to general population not so employed. N.C. Gen. Stat. § 97-53(13).
2. As the result of the compensable occupational disease, plaintiff was disabled and is entitled to receive total disability benefits at the rate of $218.78 per week from July 13, 1998 through August 18, 1998. N.C. Gen. Stat. § 97-29.
3. As the result of the occupational disease, plaintiff is entitled to compensation for the 10% permanent partial disability to her right hand. N.C. Gen. Stat. § 97-31(12).
4. Plaintiff is entitled to the payment of the medical expenses incurred for the treatment of her hand condition and any further treatment that tends to effect a cure, give relief and/or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25; -25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fees approved below, defendant shall pay to plaintiff temporary total disability benefits at the rate of $218.78 per week beginning July 13, 1998 and continuing through August 18, 1998. All accrued compensation shall be paid in one lump sum.
2. Subject to the attorney's fees approved below, defendant shall pay to plaintiff compensation at the rate of $218.78 per week for 20 weeks for the 10% permanent partial disability rating to her right hand. All accrued compensation shall be paid in one lump sum.
3. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable occupational disease.
4. A reasonable attorney fee in the amount of 25% of the compensation approved and awarded for plaintiff is approved for plaintiff's counsel. The attorney's fee shall be deducted from the compensation due plaintiff and paid directly to plaintiff's attorney.
5. Defendant shall pay the costs of this action.
This the ___ day of January 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________ RENE C. RIGGSBEE COMMISSIONER
LKM/mhb